UNITED STATES of America, Plaintiff–Appellee/Cross–Appellant,

v.

Mario R. GARCIA–EMANUEL, Defendant–Appellant/Cross–Appellee.

Nos. 91–5131, 91–5139.

United States Court of Appeals, Tenth Circuit.

Jan. 25, 1994.

David E. O'Meilia, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him on the briefs), Tulsa, OK, for plaintiff-appellee/cross-appellant.

Thomas Michael Martin, Jonesboro, GA, for defendant-appellant/cross-appellee.

Before BALDOCK, LAY,[1] and McKAY, Circuit Judges.

McKAY, Circuit Judge.

On April 1, 1991, a jury in the Northern District of Oklahoma convicted Mario R. Garcia–Emanuel of one count of conspiracy to possess with intent to distribute and to distribute cocaine, one count of continuing criminal enterprise (hereinafter CCE), five counts of income tax evasion, one count of conspiracy to launder money, and seventeen counts of money laundering. The district court denied

---

1. Honorable Donald P. Lay, United States Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Defendant's motion for a judgment of acquittal on cocaine conspiracy and on the CCE. However, the court granted a judgment of acquittal pursuant to Rule 29(c) on all seventeen money laundering counts and on the money laundering conspiracy. Both sides timely appealed.

## I

■ Defendant challenges the sufficiency of the evidence to support the convictions for the cocaine conspiracy and the CCE. In reviewing a challenge to the sufficiency of the evidence, this court follows a well-established test.

> [T]he evidence both direct and circumstantial, together with reasonable inferences to be drawn therefrom, is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. Further, the evidence presented to support the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt.

*United States v. Sanders*, 928 F.2d 940, 944 (10th Cir.) (internal quotations and citations omitted), *cert. denied*, —— U.S. ——, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991).

■ Defendant's appeal on the cocaine conspiracy and the CCE is perfunctory. After reciting the standard of review, he merely claims that "[t]he evidence may have been sufficient to show that the government's witnesses conspired with each other but there was insufficient evidence to convince a reasonable mind that the defendant was a part of that conspiracy." (Def.'s Br. at 5–6.) Regarding the CCE, he points out that the government is required to prove that Defendant was the manager or organizer of at least five other persons involved in the CCE. He then states, "The evidence ... did not prove beyond a reasonable doubt that this defendant was the organizer or manager of any enterprise other than his mexican [sic]

restaurant." *Id.* at 6. No argument is offered beyond these conclusory statements.

A brief review of the record reveals why this is so. Far from being insufficient, the evidence was overwhelming. No fewer than four co-conspirators testified at trial to Defendant's central role in the conspiracy. In addition, the evidence, viewed in the light most favorable to the government, supported the jury's finding that Defendant was the organizer, supervisor, or manager of eight other individuals. The trial court was entirely correct in denying the motion for a judgment of acquittal on these counts. We AFFIRM the trial court's denial of a judgment of acquittal on counts 1 and 2.

## II

In its cross-appeal, the government asserts that the trial court erred in granting a judgment of acquittal on the money laundering and money laundering conspiracy counts. The district court found the evidence insufficient to sustain any of these counts.

The record, viewed in the light most favorable to the government as required by *Sanders*, shows that Defendant and his wife engaged in a wide variety of transactions involving the proceeds of his criminal enterprise. They paid their mortgage, bought some land, invested in an insurance company, collected Paso Fino riding horses, built a riding area, bought a pickup truck and horse trailers, and wired money to someone in Colombia. They paid in either cash, personal checks, or cashier's checks. While not all transactions were conducted in Defendant's name (some were in his wife's name, others were in the name of the Guadalajara Restaurant, which he owned), Defendant or his restaurant, or both, were conspicuously involved in each transaction. All told, the government charged that seventeen of the transactions constituted money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) (1988).[2]

---

2. Title 18 U.S.C. § 1956(a)(1) (1988) states:
 Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts ... such a financial transaction which in

fact involves the proceeds of specified unlawful activity—
 ....
 (B) knowing that the transaction is designed in whole or in part—

The district court granted a judgment of acquittal with respect to all the money laundering counts based on the discussion of money laundering in *Sanders,* which it read as requiring the government to prove that the transactions were structured to "conceal[ ] ... the *identity* of the person providing the illicit proceeds." (Appellant's App. at 4.) Because Defendant was so conspicuously involved in the transactions, and because it found that "[t]he Guadalajara Restaurant, for our purposes here, *was* Mario Garcia," (*id.* at 5), the court granted the judgment of acquittal.

We agree that on twelve of the seventeen counts the government failed to prove a violation of § 1956(a)(1)(B)(i). However, because we disagree with the district court's view of *Sanders,* we reinstate five of the convictions.

### A

■ A review of the statute reveals that in order to prevail at trial, the government was required to prove four elements beyond a reasonable doubt: (1) that Defendant engaged in a financial transaction; (2) that Defendant knew that the property involved in that transaction represented the proceeds of his unlawful activities; (3) that the property involved was in fact the proceeds of that criminal enterprise; and (4) that Defendant knew that "the transaction [was] designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control" of the proceeds of the specified unlawful activities. 18 U.S.C. § 1956(a)(1)(B)(i). In this appeal, the only challenge is to the fourth element, which we will refer to as the "design requirement."

This circuit first addressed the design requirement of the money laundering statute in *Sanders,* where we reversed the conviction of a man charged with using drug proceeds to purchase two automobiles. Even though one of the cars was placed in the name of the defendant's daughter, and even though the defendant's wife signed the daughter's name, we found that the purchase was so open as to negate any inference of a design to conceal. *Id.* at 946.[3]

■ It is true that *Sanders* stated that "the purpose of the money laundering statute is to reach commercial transactions intended (at least in part) to disguise the relationship of the item purchased with the person providing the proceeds...." *Id.* Defendant contended successfully in the trial court that this statement requires a judgment of acquittal unless there is evidence that the transactions were structured to conceal Defendant's identity. (Appellant's App. at 4.) We disagree. As we explained in *United States v. Lovett,* 964 F.2d 1029 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 169, 121 L.Ed.2d 117 (1992), there is "no requirement in the statute or in *Sanders* that every money laundering conviction must be supported by evidence of intent to conceal the identity of the participants to the transaction." *Id.* at 1034. Rather, "the statute is aimed broadly at transactions designed in whole or in part to conceal or disguise *in any manner* the nature, location, source, ownership or control of the proceeds of unlawful activity." *Id.* at 1034 n. 3.

### B

Although the trial court based its judgment of acquittal on an erroneous view of

---

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity
. . .
. . . .
shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

**3.** In *Sanders,* the defendant, his wife, and his daughter were all present at the dealership when

the car was purchased, and they were readily identified by the salesman. *Id.* at 945. Thus, we stated that

> the daughter's presence in person at the car lot during or somewhat subsequent to the transaction, the fact that the daughter shared defendant's last name, and defendant's and his wife's conspicuous use of the car after the purchase, undermine the government's argument ... that the ... purchase involved the requisite design of concealment.

*Id.* at 946.

*Sanders,* we nevertheless affirm on twelve of the counts.

Since 1991, challenges to the design requirement of money laundering have become a growth industry, with at least fifteen reported cases from the various courts of appeals. Given the wide range of money laundering claimed by the government in this case, and the prevalence of appeals on this point, it is useful to review both the statute and the recent case law to discern the principles that govern these appeals.

### 1

The core issue in *Sanders* was the government's contention that the money laundering statute should be interpreted broadly to include all purchases made by persons with knowledge that the money used represents the proceeds of illegal activity. We rejected that argument.

> To so interpret the statute would, in the court's view, turn the money laundering statute into a "money spending statute." This interpretation would be contrary to Congress' expressly stated intent that the transactions being criminalized in the statute are those transactions "designed to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity."

*Sanders,* 928 F.2d at 946 (quoting § 1956(a)(1)(B)(i)).

Implicit in the *Sanders* formulation is the difficult task of separating money laundering, which is punishable by up to twenty years in prison, from mere money spending, which is legal. This, of course, is an issue of congressional intent.

We agree with the Executive Branch statements quoted by the prosecution as to the purposes of the money laundering statute. The President's Commission on Organized Crime described money laundering as schemes designed to assist criminals who "seek to change large amounts of cash ... into an ostensibly legitimate form, such as business profits or loans, *before using those funds for personal benefit....*" President's Commission on Organized Crime, *The Cash Connection: Organized Crime, Financial Institutions, and Money Laundering,* at 7 (Interim Report, Oct. 1984) (*quoted in United States v. Cuevas,* 847 F.2d 1417, 1424 n. 19 (9th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989)) [hereinafter *The Cash Connection* ] (emphasis added). Similarly, the Department of the Treasury described the purpose of money laundering as "conceal[ing] the illicit sources of their monies by *creating the appearance of legitimate wealth.*" United States Department of the Treasury, *Layering,* Money Laundering Updates, Mar. 1991, at 9, 9 [hereinafter *Layering* ] (emphasis added).

These statements reveal the heart of the difficulty in applying the money laundering statute. In speaking of transactions that are "designed ... to conceal ... the nature, the location, the source, the ownership or the control" of assets, 18 U.S.C. § 1956(a)(1)(B)(i), the statute is aimed at transactions that are engaged in for the *purpose* of concealing assets. Merely engaging in a transaction with money whose nature has been concealed through other means is not in itself a crime. In other words, the government must prove that the specific transactions in question were designed, at least in part, to launder money, not that the transactions involved money that was previously laundered through other means. If transactions are engaged in for present personal benefit, and not to create the appearance of legitimate wealth, they do not violate the money laundering statute.

### 2

The statute speaks in terms of transactions that are "designed" to conceal the proceeds of unlawful activity. Whenever a drug dealer uses his profits to acquire any asset—whether a house, a car, a horse, or a television—a jury could reasonably suspect that on some level he is motivated by a desire to convert his cash into a more legitimate form. The requirement that the transaction be "designed" to conceal, however, requires more than a trivial motivation to conceal.

The Seventh Circuit encountered a similar problem regarding the level of proof required to show that the assets involved were the

proceeds of a crime. The court stated that "[i]t will be a rare case in which [the design] requirement[ ] will be satisfied without proof that the funds used in the charged transaction were derived in substantial measure from 'specified unlawful activities' rather than from other legal or illegal conduct." *United States v. Jackson,* 935 F.2d 832, 840 (7th Cir.1991). In a like vein, were we to hold that an inference of a trivial motivation to conceal was sufficient to support a conviction, we would essentially "turn the money laundering statute into a 'money spending statute.' " *Sanders,* 928 F.2d at 946.

In reviewing the sufficiency of the evidence, the most difficult cases are those in which the defendant acquires an asset which both brings a present personal benefit and has substantial resale value, and thus is a potential tool for money laundering. On the one hand, cases involving investments made with illegal proceeds are close to the core of the statute's purpose of criminalizing changing cash into an "ostensibly legitimate form, such as business profits or loans, before using those funds for personal benefit...." *The Cash Connection, supra,* at 7. On the other hand, when the defendant has merely acquired an asset that brings a significant present personal benefit to himself or his family, the inference becomes more difficult to draw.

In these cases, our requirement that the jury verdicts of guilt beyond a reasonable doubt be based on substantial evidence, and not mere suspicion, *Sanders,* 928 F.2d at 944; *United States v. Ortiz,* 445 F.2d 1100, 1103 (10th Cir.), *cert. denied,* 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971), becomes paramount. It is not enough for the government to show that a defendant probably is guilty; in our system, guilt must be proven beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

### 3

■ While there are many things that criminals can do with their profits that would arouse suspicion of an intent to launder the money, actions that are merely suspicious and do not provide substantial evidence of a design to conceal will not alone support a conviction. There are many examples of suspicious behavior that we have held will not, standing alone, justify a finding of a design to conceal beyond a reasonable doubt. We held in *Sanders* that the defendant's decision to register a car in his daughter's name would not alone support his conviction. *Sanders,* 928 F.2d at 946. Likewise in *Lovett,* 964 F.2d 1029 at 1036, we reversed a conviction based on similar circumstances—the purchase of a vehicle registered in a family member's name with proceeds of an illegal transaction. We concluded in that case that even the additional evidence that the defendant "created the impression with the salesman that his siding business was a lucrative business, going so far as to offer the salesman a job" was insufficient additional evidence of intent to conceal. *Id.*

■ It also can fairly be discerned from our cases that the mere fact that a defendant was convicted of money laundering arising out of some transactions is not sufficient to sustain a money laundering conviction involving other transactions. In *Lovett,* the court reversed the conviction relating to an automobile purchase notwithstanding evidence of other money laundering activities which were sustained in the same case. *Id.*

A final example is our conclusion in *Sanders,* 928 F.2d at 945–46, that even the additional evidence of the use of a large amount of cash to purchase a car was not sufficient to satisfy the proof necessary to sustain a money laundering conviction.

By way of contrast, a variety of types of evidence have been cited by this and other circuits as supportive of evidence of intent to disguise or conceal. They include, among others, statements by a defendant probative of intent to conceal;[4] unusual secrecy surrounding the transaction;[5] structuring the

---

*United States v. Saget,* 991 F.2d 702, 712 (11th Cir.1993); *United States v. Beddow,* 957 F.2d 1330, 1334–35 (6th Cir.1992).

*United States v. Cota,* 953 F.2d 753, 760–61 (2d Cir.1992).

transaction in a way to avoid attention;[6] depositing illegal profits in the bank account of a legitimate business;[7] highly irregular features of the transaction;[8] using third parties to conceal the real owner;[9] a series of unusual financial moves cumulating in the transaction;[10] or expert testimony on practices of criminals.[11]

 This is not an exclusive list. It is obvious from the proliferation of details of evidence that no list of categories can govern the decision about what is sufficient evidence to sustain a conviction of money laundering beyond a reasonable doubt. However, it is clear from our decision in *Lovett* that trial courts, upon motion for directed verdict, and juries, upon proper instruction, must rigorously enforce two disciplines. The first is our decision in *Sanders,* reaffirmed in *Lovett,* that this is a concealment statute—not a spending statute. The second is the requirement that the evidence of concealment must be substantial.

An examination of *Lovett* and *Sanders* illustrates our holding. In *Lovett,* the conviction on other money laundering counts, evidence of placing the purchased vehicle in the name of a relative, and even a conversation which created the impression that the defendant's business was a lucrative one were not sufficient, alone or in combination, to support concealment beyond a reasonable doubt. Similarly, in *Sanders* we reversed a conviction supported only by the evidence that ownership of a vehicle was placed in the name of a relative and that the defendant used a large amount of cash. Taken togeth-

er, these cases make clear that the mere accumulation of non-concealing behavior is not enough to sustain a conviction for money laundering. Rather, there must be evidence that the transaction was "designed in whole or in part [ ] to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i).

### C

With these principles in mind, we turn to the details of the individual counts against the present Defendant.

 In counts 9 and 10, Defendant withdrew $9,000 from his bank account in the form of a cashier's check on which he was named as remitter and then used it to pay his residential mortgage. No other evidence was presented to establish a design to conceal. While we acknowledge that all mortgage payments increase the owner's investment in his home, the mere fact that Defendant made the payment with a cashier's check purchased with drug money is insufficient to sustain a money laundering conviction. We AFFIRM the grant of a judgment of acquittal on counts 9 and 10.

 In count 11, Defendant presented a cashier's check, on which his restaurant was listed as remitter, to pay for some land. The transaction not only creates the false impression that the restaurant was his source of wealth, but it creates documentary evidence in support of that deception that could mis-

**6.** *United States v. Massac,* 867 F.2d 174, 178 (3d Cir.1989).

**7.** *United States v. Termini,* 992 F.2d 879, 880 (8th Cir.1993); *United States v. Posters 'N' Things Ltd.,* 969 F.2d 652, 661 (8th Cir.1992), *cert. granted on other grounds,* —— U.S. ——, 113 S.Ct. 1410, 122 L.Ed.2d 782 (1993); *United States v. Jackson,* 935 F.2d 832, 842 (7th Cir.1991); *United States v. Sutera,* 933 F.2d 641, 648 (8th Cir. 1991).

**8.** *United States v. Jackson,* 983 F.2d 757, 764, 766–67 & n. 4 (7th Cir.1993); *United States v. Campbell,* 977 F.2d 854, 858 n. 4 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1331, 122 L.Ed.2d 716 (1993).

**9.** *United States v. Kaufmann,* 985 F.2d 884, 894 (7th Cir.1993) (distinguishing *Sanders* ), *cert. denied,* —— U.S. ——, 113 S.Ct. 2350, 124 L.Ed.2d 259 (1993); *United States v. Turner,* 975 F.2d 490, 496–97 (8th Cir.1992), *cert. denied sub nom. Dowdy v. United States,* —— U.S. ——, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993); *United States v. Edgmon,* 952 F.2d 1206, 1210–11 (10th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3037, 120 L.Ed.2d 906 (1992).

**10.** *United States v. Peery,* 977 F.2d 1230, 1234 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1354, 122 L.Ed.2d 734 (1993); *Lovett,* 964 F.2d at 1035.

**11.** *United States v. Blackman,* 904 F.2d 1250, 1257 (8th Cir.1990).

lead an investigator. This furthers a launderer's goal of "plac[ing] illicit bulk cash in an economy, [so] it becomes increasingly difficult to uncover their money laundering operation." *Layering, supra*, at 1474. We REVERSE the district court and REMAND with instructions to reinstate the conviction on count 11.

In count 12, Defendant made a second payment on the same land, using a cashier's check on which he, not his restaurant, was named as remitter. Consistent with our holding on counts 9 and 10, we do not believe that this, alone, demonstrates a design to conceal. Moreover, the record on appeal does not indicate whether the land in question was essentially an investment or whether it was used in significant part for present personal enjoyment. Accordingly, the government has not met its burden of persuasion to overturn the judgment of acquittal below. We AFFIRM the grant of a judgment of acquittal on count 12.

In count 13, Defendant first bought a Certificate of Deposit with cash then used the CD as collateral for a loan to an insurance company he partially owned. This is classic money laundering where Defendant, through a complex series of transactions, transformed the cash he received selling drugs into a legitimate business investment that allowed him to display his wealth without arousing suspicion. We REVERSE and REMAND with instructions to reinstate the conviction on count 13.

In count 14, unlike count 13, Defendant and his wife made no effort to conceal cash, but rather, spent $15,000 in cash as partial payment for a Paso Fino horse. The evidence on appeal shows that Defendant and his wife had a hobby of raising Paso Fino horses. Therefore, while a horse in some instances could be essentially an investment, there was a significant aspect of present personal benefit in this case. The record also shows that it is not unusual for horse purchasers to use cash when making a down payment. (Appellant's App. at 145.) At some point in their dealings with the seller and after agreeing to purchase the horse, Defendant and his wife misrepresented the source of the cash to the seller, indicating that the money came from the weekend profits at their restaurant. While it is true that this misrepresentation brings an element of concealment into the transaction, we do not believe that, standing alone and in the face of other circumstances present, this single misrepresentation can amount to substantial evidence that the transaction was designed to conceal illegal funds.

As we discussed *supra*, the most difficult cases are those in which the defendant acquires an asset that both brings a present personal value and has substantial investment value. It is in these borderline cases that the substantial evidence requirement becomes paramount. The only evidence of concealment in count 14 is the oral misrepresentation which Defendant made to the seller. However, Defendant initially negotiated and signed the contract for the horse in his own name. He made the subsequent payments on the horse with a cashier's check in which he was the sole remitter. The oral misrepresentation occurred after the parties had already agreed to the transaction, and only after a paper trail had already been created that clearly connected Defendant to the cash. Unlike count 11, Defendant did not transfer money to his restaurant, use his restaurant as a remitter, involve his restaurant as a named party in any kind of transaction, or design a paper trail that would lead an investigator to believe that the money for the horse came from some source other than Defendant.

Thus, it appears from the totality of the evidence that the transaction was not *designed* to conceal the source of his money. Instead, the evidence only supports the conclusion that Defendant entered into the transaction for his present personal benefit, for which he paid in cash. The single false comment about the source of the cash is not substantial evidence that the transaction itself was designed, in whole or in part, to conceal money under the circumstances in which it was made. We AFFIRM the grant of a judgment of acquittal on count 14.

In count 22, Defendant made another payment on the same horse from count 14. To do so, he used a cashier's check with Defen-

dant as remitter. Because there is no new evidence of a design to conceal, count 22 is controlled by our analysis in count 14. We AFFIRM the grant of a judgment of acquittal on count 22.

■ In count 15, Defendant's wife purchased another Paso Fino horse in Defendant's name with a $20,000 check drawn on their joint checking account. In the week prior to the issuance of the check, $23,000 in currency was deposited into their checking account in three units of $7,000, $8,000, and $8,000.

Ordinarily, this pattern of deposits would be prosecuted under § 1956(a)(1)(B)(ii) as designed to avoid a transaction reporting requirement—in this case, the currency transaction report banks must issue when they receive deposits of over $10,000 cash. *See* 31 U.S.C. § 5313(a) (1988); 31 C.F.R. § 103.22 (1992). Were the case to have proceeded under this theory, the proof would have been quite straightforward.

The government, however, has chosen to prosecute not the deposits under (B)(ii), but the subsequent purchase under (B)(i) which criminalizes money laundering. The inference under this theory, that the design to conceal in the first transaction (the purchase of the cashier's check) can be imputed to the second (the purchase of the horse), is considerably weaker. Nevertheless, this is evidence of a design to conceal, and we are constrained to reverse. "If we had sat on the jury, we might not have convicted [Defendant] for money laundering. But in reviewing [his] conviction on appeal, we are unable to hold that the jury's conclusion was unreasonable." *United States v. Posters 'N' Things Ltd.*, 969 F.2d 652, 661 (8th Cir.1992), *cert. granted on other grounds*, —— U.S. ——, 113 S.Ct. 1410, 122 L.Ed.2d 782 (1993). We REVERSE and REMAND with instructions to reinstate the conviction on count 15.

■ In counts 16 and 17, Defendant bought a pickup truck and a horse trailer with cash and placed them both in his wife's name. Ordinarily, this would not be sufficient to convict of money laundering. However, the government also presented testimony from a co-conspirator that Defendant indi-

cated that he planned to place assets in his wife's name to deceive the IRS. This testimony is probative of a design to conceal. We REVERSE and REMAND with instructions to reinstate the convictions on counts 16 and 17.

■ In counts 18, 19, 20, 24 and 25, Defendant purchased horses, another horse trailer, a covered riding arena, and a round pen with cash or checks. In each instance, Defendant's name appears on the contract of sale or the check. The government has not shown evidence that any of these assets were placed in his wife's name nor any other evidence of a design to conceal. Given Defendant's hobby of raising horses and the appearance of his name on documents accompanying each sale, the evidence is insufficient to support the convictions for money laundering. We AFFIRM the grant of a judgment of acquittal on counts 18, 19, 20, 22, 24, and 25.

■ In count 21, Defendant purchased a watch with a cashier's check on which he appears as remitter. The government's sole evidence of a design to conceal is a business card for Defendant's restaurant attached to the sales receipt. This is insufficient evidence that the purchase of the watch was designed to conceal anything. We AFFIRM the grant of a judgment of acquittal on count 21.

■ In count 23, Defendant wired $4,440 from his bank to the Florida bank account of a Colombian national. The government presented no evidence of an unusual structure to this transaction, of undue secrecy surrounding it, or of any attempt to avoid attention. The government has also not presented any expert testimony about the pattern of drug dealers in wiring funds. Under these circumstances, the evidence is insufficient to support the conviction. We AFFIRM the grant of a judgment of acquittal on count 23.

### D

In count 8, Defendant is accused of conspiring with his wife to launder money. The district court granted a judgment of acquittal solely because it found insufficient evidence

to support any of the substantive violations listed as overt acts in the indictment (corresponding to counts 9–25). . (Appellant's App. at 5.) [12] Because we have reinstated the convictions in counts 11, 13, 15, 16 and 17, we conclude that there is sufficient evidence of five of the overt acts charged in the indictment. We REVERSE and reinstate the conspiracy conviction in count 8 as well.

### III

We AFFIRM the district court's denial of a judgment of acquittal on counts 1 and 2. We also AFFIRM the district court's grant of a judgment of acquittal on counts 9, 10, 12, 14, 18, 19, 20, 21, 22, 23, 24 and 25. We REVERSE the grant of a judgment of acquittal on counts 8, 11, 13, 15, 16 and 17. We REMAND for resentencing consistent with this opinion.

---

**12.** Defendant does not contest that there is sufficient evidence to support the jury's finding that he agreed with his wife to engage in the financial transactions at issue here. Defendant merely claims that those transactions were not unlawful, so the agreement was not a criminal conspiracy.