**UNITED STATES OF AMERICA**

v.

**Josephine TUSANEZA, Defendant.**

**No. 02 CR. 821(SHS).**

United States District Court, S.D. New York.

July 9, 2003.

---

Kevin P. Gilleece, Gilleece & Gilleece, White Plains, NY, for Defendant.

### OPINION AND ORDER

STEIN, District Judge.

On March 3, 2003, defendant Josephine Tusaneza was convicted by a jury of conspiring to commit a money laundering offense in violation of 18 U.S.C. § 1956(h) and committing a money laundering offense in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Tusaneza now moves for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c) on the ground that there was insufficient evidence to support the jury's determination that (1) she knew that the property involved in the transaction "represent[ed] the proceeds of some form of unlawful activity," and (2) she knew that the bail bond scheme was "de-

signed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i). Because a rational trier of fact could conclude beyond a reasonable doubt that Tusaneza had the requisite knowledge, defendant's motion is denied.

A defendant who challenges her conviction for lack of sufficient evidence bears a "heavy burden." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir.2000). The evidence at trial must be viewed "in the light most favorable to the government and all permissible inferences [must be] drawn in its favor." *United States v. Valenti*, 60 F.3d 941, 945 (2d Cir.1995) (quotations omitted). The evidence is to be viewed "not in isolation but in conjunction." *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir.1994). Furthermore, the jury's verdict may be based entirely on circumstantial evidence. *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir.1995).

In considering a motion for judgment of acquittal, "the Court 'must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir.1999) (*quoting United States v. Mariani*, 725 F.2d 862, 865 (2d Cir.1984)). A jury verdict must be upheld "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original); *Autuori*, 212 F.3d at 114. If the Court concludes "that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [it] must let the jury decide the matter."

*Mariani*, 725 F.2d at 862 (citations omitted).

The Court finds that the evidence against Josephine Tusaneza, although not overwhelming, was sufficient to allow a rational trier of fact to find beyond a reasonable doubt that Tusaneza knew that the property involved in the transaction represented the proceeds of some form of unlawful activity and that she knew that the bail bond scheme was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of those proceeds.

This case involved a corrupt bail bond that was posted in a criminal proceeding in Westchester County Court. Through the testimony of admitted conspirator Victor Gonzalez and the introduction of several phone calls made between other conspirators, the evidence at trial established that there was a conspiracy to commit money laundering among Victor Gonzalez, Daniel Gonzalez, Orlando Valle, and Robert Beretta, all of whom admitted to participating in the money laundering scheme and whose guilty pleas were admitted into evidence at trial. At issue is the question of Tusaneza's participation in that conspiracy.

At trial, the Government's primary witness was Victor Gonzalez, who pled guilty to distributing more than 10,000 kilograms of cocaine between 1986 and 1998 and who testified at Tusaneza's trial pursuant to a cooperation agreement with the Government. Victor testified that at his request, Tusaneza put up her property at 274 Park Hill Avenue in Yonkers in March 1998 as collateral for a $250,000 bond to secure the release of his brother, Marcos Gonzalez, who had been jailed in Westchester on state drug charges since August 1997.

Victor was concerned that using $250,000 cash from narcotics proceeds to secure the bail would raise suspicions regarding the origin of the funds. He also

testified about his concern that pledging a recently-acquired property in his name would raise similar suspicions. Therefore, pursuant to the advice of bailbondsman and co-conspirator Danny Gonzalez, Victor sought out an individual who would be willing to pledge his or her property as collateral for the bond.

Victor testified that he successfully persuaded defendant Josephine Tusaneza to participate in the bail bond scheme by paying her $250,000 in cash from narcotics proceeds in exchange for her agreement, among other things, to (1) pledge a property that she owned as collateral for bail in support of Marcos Gonzalez; (2) secretly receive $250,000 for the house from Victor but withhold the transfer of title until Marcos's release was secured; and (3) lie at the bail hearing in Westchester County Court about her relation to Marcos, if asked.

In his testimony, Victor acknowledged that he never explicitly told Tusaneza that the money (which, when she testified at trial, she denied receiving) represented proceeds from narcotics trafficking. Nevertheless, viewing the evidence in light of the totality of the suspicious circumstances surrounding the transaction, a rational trier of fact could conclude beyond a reasonable doubt that Tusaneza knew that the funds involved in the transaction represented the proceeds of some form of criminal activity and that the bail bond transaction was designed in whole or in part to conceal the true nature or origin of those funds. A brief review of the record reveals why this is so.

The jury heard extensive testimony from Victor Gonzalez about how he told Tusaneza that he wanted her to post her property at 274 Park Hill Avenue as collateral for a bail bond of $250,000 and that he was willing to purchase the property from her, but only if she would agree to keep the property in her name until after Marcos was released on bail. Victor told Tusaneza that Marcos had been arrested for narcotics offenses. Apparently recognizing that Victor was going to great lengths to conceal the purchase of the property from the Westchester County Court, Tusaneza's husband—in the presence of his wife, the defendant—asked Victor why Victor simply did not purchase the property outright and post it as collateral himself. Victor responded that "it wouldn't look right that I showed up [in Westchester County Court] with a house that ... I had just bought. It wouldn't look right ... I couldn't have anything in my name.... It needed to be in their name because it had to be somebody that owned the property for a while." (Tr. 243, 245.) Victor also testified that the Tusanezas told him that they would be willing to proceed with the transaction despite the fact that their lawyer advised them against it.

Because this Court is obligated at this stage of the proceedings to draw all permissible inferences in favor of the Government, the Court concludes that a rational trier of fact could infer from Victor's requests for secrecy regarding the transaction, including his response to the Tusanezas' inquiry, that Josephine Tusaneza knew (1) that the outright purchase of the property by Victor would subject Victor to unwanted questions about where the money came from because the money was derived from an illegal source or activity and (2) that the unconventional and secretive nature of the property transaction was designed to conceal the source of that money. *See, e.g., United States v. Garcia–Emanuel,* 14 F.3d 1469, 1475–76 (10th Cir.1994) ("[A] variety of types of evidence have been cited by [federal appellate courts] as supportive of evidence of intent to disguise or conceal. They include, among others ... unusual secrecy surrounding the transaction; structuring the transaction in

a way to avoid attention; ... [and] highly irregular features of the transaction....").

There was additional circumstantial evidence pointing to Tusaneza's knowledge about the source of the funds and the plan to conceal that source. Victor testified that when he paid Tusaneza for the purchase of her property, he did so with $250,000 in cash and delivered it to Tusaneza in a gym bag. Victor also explained how he and Tusaneza devised a false story for her to tell at the bail hearing in Westchester County Court if asked about her relation to Marcos Gonzalez. Victor testified that Tusaneza agreed that if she had to testify at the hearing, she would falsely say that she knew Marcos because he was a tenant in one of the residential buildings she owned.

Furthermore, the jury heard testimony from Tusaneza's civil attorney—Anthony Briguglio—as well as from Tusaneza's daughters and from Tusaneza herself that she has been involved in the real estate business extensively for many years, as a real estate owner and manager, and that she is well-versed in the business aspects of real estate transactions. This evidence of defendant's experience in the real estate business permitted the jury to infer that she knew that the property transaction proposed by Victor was neither conventional in form nor legitimate in purpose.

Finally, a rational trier of fact could have given weight to what it could reasonably have concluded was untruthful testimony by Tusaneza regarding her knowledge about Victor and the property transaction.

While any one of those red-flag events, standing alone, might not be sufficient to support the jury's verdict, when taken together, the pattern of suspicious activity and concealment in which defendant engaged was that of an effort to launder illegally-obtained proceeds, or at least a trier of fact could reasonably so conclude.

Accordingly, Tusaneza's motion for a judgment of acquittal pursuant to Fed. R.Crim.P. 29(c) is denied.

SO ORDERED.