**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 7 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MALCOLM FLOYD STEPHENS,

    Defendant-Appellant.

No. 99-7156
(E. District of Oklahoma)
(D.C. No. CR-99-33-S)

**ORDER AND JUDGMENT***

Before **BRORBY**, **KELLY,** and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Following a jury trial, Malcom Stephens was convicted on one count of attempting to manufacture methamphetamine in violation of 21 U.S.C. § 846.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The district court sentenced Stephens to a term of imprisonment of 180 months. Counsel for Stephens has filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), indicating his belief that the appeal is frivolous and requesting leave to withdraw as counsel. This court agrees that the appeal is frivolous; we thus **grant** counsel leave to withdraw. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **dismiss without prejudice in part** and **affirm in part**.

In *Anders*, the Supreme Court held that if counsel finds a case to be wholly frivolous after conscientious examination, counsel may so advise the court and request permission to withdraw. In so doing, counsel must submit to both the court and his client a brief referring to anything in the record which could arguably support the appeal; the client may raise any additional points he chooses. This court will then undertake an examination of the entire record to determine whether the appeal is in fact frivolous. If this court so decides, we may grant counsel's request to withdraw and proceed to a decision on the merits. *See Anders*, 386 U.S. at 744.

The facts, stated in the light most favorable the United States,[1] are as follows. On January 22, 1999, state and local law enforcement officers executed a search warrant at 379 West First Street in Krebs, Oklahoma. Two individuals, later identified as Stephens and Louie Lea, were observed inside an unattached garage. Officer Ricky Wade testified that Stephens and Lea were standing near an overhead door toward the back of the garage. As soon as they observed the officers, Stephens and Lea began running through the garage. In response, Wade ran a parallel route outside the garage, watching the individuals though windows all along the side of the garage. When Stephens and Lea attempted to exit a door on the other side of the garage, Wade placed them under arrest.

The odor of ammonia inside the garage was so strong that officers were unable to remain inside the building for extended periods. Additionally, a crock pot located inside the garage was emitting fumes which were filling up the garage. When officers expressed concern about the crock pot getting hot, Stephens advised the officers that "All you have to do is unplug it." After officers unplugged the crock pot, there was a discussion about the need to open the garage doors to ventilate the garage. Stephens advised Wade as to the

---

[1]*See United States v. Williamson*, 53 F.3d 1500, 1516 (10th Cir. 1995) (noting, in context of challenge to sufficiency of the evidence, that this court views "the evidence in the light most favorable to the government, . . . resolve[s] any conflicts in the evidence if favor of the government and . . . assume[s] the trier of fact found that evidence credible").

-3-

location of the controls of the garage door opener.  Wade then relayed this information to another officer who then opened the garage doors.  Inside the garage, a clandestine methamphetamine lab was in operation; pseudoephedrine was being processed in the crock pot, as well as a Fry Daddy, two glass jars, and a coffee grinder.  Inside the residence, officers found a paper sack containing seventeen empty Pseudo Extreme bottles, each containing a large number of pseudoephedrine tablets.

Lea testified on behalf of Stephens and admitted that he was in the process of preparing to manufacture methamphetamine using the Nazi method of manufacture.  The Nazi method of manufacture combines pseudoephedrine or ephedrine, anhydrous ammonia, and lithium or sodium metal to make methamphetamine. Lithium metal commonly comes from stripped lithium camera batteries.  In addition to the above-described pseudoephedrine, liquid anhydrous ammonia from tanks and stripped lithium metal from batteries were found in the garage.

In addition to the fact that Stephens was apprehended coming out of an operating drug lab in the garage, multiple small, clear plastic baggies and syringes were discovered in a night stand drawer in the bedroom in which Stephens had been sleeping.  On the night stand were court summonses in Stephens' name.  There was testimony at trial that possession of these types of drug paraphernalia

was consistent with the distribution of drugs. In addition, a government fingerprint expert testified at trial that Stephens' fingerprint had been found on a glass jar containing pseudoephedrine located in the garage.

Officers found Stephens' girlfriend, Elisa Carter, in the residence when they executed the search warrant. At trial, Carter testified that she had not entered the garage on the afternoon of the search at any time after 3:00 p.m. and never saw any indication that there was a methamphetamine lab operating inside the garage. She also testified that law enforcement officers had threatened to prosecute her in order to pressure her to testify against Steffens. For his part, Lea testified that he alone was responsible for the methamphetamine laboratory in the garage, although he acknowledged that he had purchased ingredients for manufacture, including lithium batteries, rock salt, starter fluid and coffee filters, while with Elisa Carter and that he had ground the pseudoephedrine pills and soaked them in denatured alcohol in the residence when Carter and Stephens were present. Lea also testified that he had run into Stephens, who was outside of the garage, when Lea was fleeing that location upon the arrival of the police. This was contrary to the testimony of two law enforcement officers, including Wade, who indicated that they had seen two individuals inside the garage at the time of their arrival.

In his *Anders* brief, counsel notes that Stephens insists on raising the following issues on appeal: (1) that counsel provided constitutionally ineffective assistance at trial; and (2) that the evidence was insufficient to support his conviction. Pursuant to *Anders*, Stephens was provided with a copy of counsel's *Anders* brief and notified of his right to file a responsive *pro se* brief. Stephens has filed such a *pro se* brief, further elucidating the two claims set out above.

"Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (*en banc*). This is not one of those rare cases where the factual record is so well developed that this court is willing to forego an initial consideration by the district court addressing the question in the context of a 28 U.S.C. § 2255 petition. *See id.* at 1241 ("[T]here is only a slight chance that we will forego the development of a factual record or at least an opinion by the district court on the subject in the first instance."). Accordingly, Stephens' ineffective assistance claims are dismissed without prejudice to the reassertion of those claims in a § 2255 petition. *See id.* at 1242 ("The rule in this circuit, then, is that claims of constitutionally ineffective counsel should be brought on collateral review under 28 U.S.C. § 2255. . . . No

procedural bar will apply to claims which could have been brought on direct appeal but were brought in post-conviction proceedings instead.").

In his *Anders* brief, counsel notes that Stephens insists upon raising a claim that the evidence was not sufficient to support his conviction for attempting to manufacture methamphetamine and further notes that upon a conscientious review of the record he believes such a claim is frivolous. After a thorough review of the record, this court agrees that Stephens' sufficiency-of-the-evidence claim is frivolous.

In evaluating challenges to the sufficiency of evidence, this court applies the following standard: "[E]vidence both direct and circumstantial, together with reasonable inferences to be drawn therefrom, is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Garcia-Emanuel*, 14 F.3d 1469, 1472 (10th Cir. 1994) (quotations omitted). We will overturn a jury's finding only if no reasonable juror could have reached the disputed verdict. *United States v. Carter*, 130 F.3d 1432, 1440 (10th Cir. 1997). This necessarily high hurdle facing a party challenging a jury verdict "reflects a deep respect for the fact-finding function of the jury." *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994) (quotation omitted).

In order to convict Stephens of attempting to manufacture methamphetamine, the government was required to prove: (1) that Stephens had the requisite criminal intent and (2) that Stephens undertook "an act or omission constituting a 'substantial step' toward the commission of the substantive offense." *United States v. Leopard*, 936 F.2d 1138, 1140 (10th Cir. 1991). Without restating all of the evidence adduced at trial set forth above, we simply note that the evidence, and the reasonable inferences drawn therefrom, is more than sufficient to support Stephens' conviction. Although there was no direct evidence at trial as to whether Stephens possessed the necessary criminal intent, the jury was certainly entitled to draw an inference of criminal intent from the circumstantial evidence produced at trial. In particular, the government produced evidence that Stephens attempted to flee when officers sought to execute the search warrant, that Stephens had items consistent with drug distribution in the night stand next to his bed, and that Stephens was present during the beginning stages of the production of a batch of methamphetamine. As to the requirement of a "substantial step," it is uncontested that the process of methamphetamine production was ongoing in the garage and that all of the ingredients necessary to complete the batch were present in the garage and/or residence.

Despite this strong evidence of guilt, Stephens asserts that there was no evidence that he was present at the scene of the crime. He further notes that Lea

and Carter testified that he was never present. In contrast to Stephens' assertions, Officer Wade testified that he observed Stephens inside the garage and that he arrested him just as Stephens stepped out the side door of the garage in an attempt to escape. This testimony contradicts the testimony of Carter and Lea and presents a question of credibility for the jury. *See United States v. Williamson*, 53 F.3d 1500, 1516 (10th Cir. 1995). The jury obviously found the testimony of Wade credible and the testimony of Lea and Carter incredible. In addition to the testimony of Wade, the government produced evidence that Stephens' fingerprint was found on a glass jar[2] used in the methamphetamine manufacturing process and that Stephens was familiar with the operation of both the crock pot and the garage doors. This evidence certainly supports the testimony of Wade.

Stephens also makes a number of spurious assertions that the testimony of the arresting officers was so inherently contradictory and unbelievable that this court should discount that testimony for the purposes of reviewing the sufficiency of the evidence. We simply note that we have reviewed the entire record in this case and find Stephens' assertions about the testimony of the arresting officers completely frivolous and lacking in record support. The testimony of the

---

[2]Stephens asks this court to discount the importance of the fingerprint because several other fingerprints were found on the same jar. We fail to see how the presence of other prints precludes the inference, arising from the presence of Stephens' print, that he had participated in the manufacture of methamphetamine.

arresting officers, credited as it was by the jury, coupled with the physical evidence produced at trial in this case, is more than sufficient to support the jury's verdict of guilt.

For those reasons set out above, counsel's motion to withdraw is **GRANTED**, Stephens' ineffective-assistance-of-trial-counsel claims are **DISMISSED WITHOUT PREJUDICE**, and the district court's judgment of conviction is **AFFIRMED**.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge