**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 12, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MONTRESSA CUNNINGHAM,

    Defendant - Appellant.

No. 24-3059

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:21-CR-40105-TC-1)**

_____

Paige A. Nichols, Former Assistant Federal Public Defender (Melody Brannon, Federal Public Defender, with her on the briefs), Kansas Federal Public Defender, Topeka, Kansas, for Defendant-Appellant.

James A. Brown (Kate E. Brubacher, United States Attorney, and Carrie N. Capwell, Assistant United States Attorney, on the brief), District of Kansas, Kansas City, Kansas, for Plaintiff-Appellee.

_____

Before **MATHESON**, **EBEL**, and **MORITZ**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

    A jury convicted Defendant Montressa Cunningham ("Cunningham") of sixteen offenses stemming from a fourteen-month fraudulent scheme. Cunningham and his wife Felicia purchased seven higher-end used cars, financing those purchases

with bank loans they obtained through the car dealerships.  Cunningham and his wife obtained those bank loans by providing false information on their loan applications.  Before registering the cars, the Cunninghams altered the title paperwork they received from the car dealerships to eliminate the bank lender's lien information.  That enabled the Cunninghams to obtain a false clear title to each vehicle, which they then used to obtain cash, either by selling the car or obtaining a title loan on the vehicle.  In this direct criminal appeal, Cunningham challenges the sufficiency of the evidence to support seven of his sixteen convictions.  Specifically, Cunningham challenges his bank fraud conviction on Count 2, his wire fraud conviction on Count 9, and his money laundering convictions on Counts 12 through 16.  Having jurisdiction under 28 U.S.C. § 1291, we REVERSE his bank fraud conviction on Count 2 because there was no evidence that Cunningham was involved in his wife obtaining the bank loan underlying this count.  We also REVERSE Cunningham's wire fraud conviction on Count 9 because the Government failed to prove the requisite interstate-commerce element of that offense.  But we AFFIRM Cunningham's money laundering convictions on Counts 12 through 16.  We REMAND for resentencing.

## I. BACKGROUND

The United States originally indicted both Cunningham and Felicia on seventeen counts charging conspiracy, bank fraud, wire fraud, and money laundering.  The district court severed the counts against Felicia after she informed the court that she intended to testify at trial against Cunningham in exchange for the United States

2

dismissing all charges against her. Cunningham, in turn, sought to prevent his wife's testimony against him by asserting marital privilege. The United States ultimately did not call Felicia to testify at Cunningham's trial.

At trial, the Government dismissed Count 12 and renumbered the counts. The district court then tried Cunningham on the following counts:

**Count 1** – charging Cunningham with conspiring (18 U.S.C. § 1349) with Felicia, from on or about December 3, 2018, through on or about February 3, 2020, to commit bank fraud (18 U.S.C. § 1344) and wire fraud (18 U.S.C. § 1343);

**Counts 2–8** – charging bank fraud and aiding and abetting bank fraud (18 U.S.C. §§ 2, 1344), one count for each of the seven used cars that the Cunninghams financed with bank loans[1];

**Counts 9–11** – charging wire fraud and aiding and abetting wire fraud (18 U.S.C. §§ 2, 1343), based on use of the Internet either to purchase cars or to apply for loans; and

**Counts 12–16** – charging money laundering and aiding and abetting money laundering (18 U.S.C. §§ 2, 1956(a)(1)(B)(i)) the proceeds of their illegal activity by either selling the cars or using the car titles to obtain title loans.

Summarizing, the evidence at trial, viewed in the light most favorable to the verdict, United States v. Little, 119 F.4th 750, 786 (10th Cir. 2024), cert. denied, 2025 WL 2824198 (U.S. Oct. 6, 2025), indicated the following: Cunningham and Felicia lived in Junction City, Kansas. Over the course of more than a year,

---

[1] The victims of these bank fraud counts, as charged, were the banks that loaned the Cunninghams money to buy each of the seven used cars. Those bank fraud offenses were complete when the Cunninghams knowingly provided the banks with "materially false information in order to induce the loan[s]." United States v. Hollis, 971 F.2d 1441, 1452 (10th Cir. 1992). While the Cunninghams also committed fraud by altering the titles and defrauded the title loan companies, those fraudulent acts were not charged as separate offenses.

beginning in December 2018, the Cunninghams purchased seven higher-end used cars from several different Kansas car dealers, financing those purchases with fraudulently obtained bank loans arranged through the car dealerships. The Cunninghams made few to no payments on any of these car loans. Before registering the vehicles in either Georgia or Kansas, the Cunninghams altered the title paperwork to remove information identifying the bank lenders as the vehicles' lienholders, enabling the Cunninghams falsely to obtain clear title to the vehicles. They then used those false clear titles to sell two of the vehicles and to use the other five vehicles as collateral for title loans.[2]

After a six-day trial, the jury convicted Cunningham of all sixteen counts. The district court imposed concurrent forty-six-month prison sentences for each of the sixteen convictions. After Cunningham was sentenced, the United States dismissed all charges against Felicia. On appeal, Cunningham argues there was insufficient evidence to support seven of his sixteen convictions.[3]

---

[2] The Cunninghams never paid any money when they bought a car. They instead financed the transactions with the fraudulently obtained bank loans, based on misrepresentations of their financial condition. Cunningham later used the false altered clear titles to the cars to get cash by either selling the cars or by using them to obtain title loans. There is no indication what he did with this cash. Perhaps he used it to live on. But the evidence does not specifically indicate that he used the cash to purchase other cars.

[3] We GRANT 1) Cunningham's unopposed August 16, 2024, motion to supplement the record on appeal, and 2) an August 20, 2024, addendum to that motion, seeking to file all the trial exhibits, both in redacted form to eliminate reference to residential addresses, birthdates, and social security numbers, and in sealed unredacted form.

## II. STANDARD OF REVIEW

We review

> the sufficiency of the evidence de novo, considering the evidence in the light most favorable to the government to determine whether any rational jury could have found guilt beyond a reasonable doubt. . . . In conducting our review, we consider all of the evidence, direct and circumstantial, along with reasonable inferences, but we do not weigh the evidence or consider the relative credibility of witnesses. . . . Consequently, our review of the evidence is highly deferential[, and] we may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Little, 119 F.4th at 786 (quoting United States v. Griffith, 928 F.3d 855, 868-89 (10th Cir. 2019)).

## III. DISCUSSION

Cunningham specifically contends that there was insufficient evidence to support his convictions on seven counts: Count 2 charging bank fraud, Count 9 charging wire fraud, and Counts 12–16 charging money laundering. As we explain next, we agree with Cunningham that there was insufficient evidence to support his conviction on Counts 2 and 9. But we uphold his money laundering convictions on Counts 12 through 16.

### A.  2013 Mercedes Benz purchased in December 2018 (Count 2 (bank fraud))

The first of the seven cars was a used 2013 Mercedes Benz that Felicia purchased on or about December 5, 2018, from CarStoreUSA in Wichita. Felicia

5

purchased that car in her own name, using a $28,000 loan[4] she obtained through the dealership from Intrust Bank. Felicia obtained this loan by falsely asserting that she was employed by a fictitious company, Global Life Insurance.[5]

Based on this fraudulently obtained bank loan, the United States charged Cunningham with bank fraud in violation of 18 U.S.C. § 1344, and aiding and abetting bank fraud under 18 U.S.C. § 2. The Government's specific theory of Cunningham's culpability for the bank fraud charged in Count 2 was that he aided and abetted Felicia's bank fraud. To convict Cunningham on that theory, the Government had to prove that 1) Felicia committed bank fraud, and that 2) Cunningham aided and abetted her commission of bank fraud. See United States v. Edwards, 782 F.3d 554, 564 (10th Cir. 2015); see also 1.180 (Instruction 7).

Briefly stated, the district court instructed jurors that, to prove bank fraud under 18 U.S.C. § 1344,[6] the Government had to establish that the defendant 1) "knowingly

---

[4] We have rounded all the loan and purchase price numbers.

[5] The Cunninghams purchased each of the seven cars using bank loans they obtained through the car dealerships. Generally, dealerships will have customers like the Cunninghams complete a credit application, which usually requires the customer's name, date of birth, address, driver's license, place of employment, income, and social security number. The dealership will then submit the customer's credit application through an online portal where banks and credit unions indicate if they are willing to fund the loan. If a bank or credit union is willing to fund the loan, the car dealership completes the loan paperwork and has the customer sign the loan documents.

[6] 18 U.S.C. § 1344 makes it a crime to

knowingly execute[], or attempt[] to execute, a scheme or artifice--

6

executed a scheme or artifice to obtain money or property from a financial institution by means of false or fraudulent pretenses, representations, or promises"; 2) the financial institution was federally insured; 3) the defendant "acted with intent to defraud a financial institution"; and 4) "the false or fraudulent pretenses, representations, or promises . . . made were material, meaning they would naturally tend to influence, or were capable of influencing the decision of[] a financial institution." (1.174 (Instruction 4).) See generally United States v. Gregory, 54 F.4th 1183, 1192–93 (10th Cir. 2022) (stating elements of § 1344 offenses); United States v. Williams, 865 F.3d 1302, 1309 (10th Cir. 2017) (stating elements of § 1344(1) offense).

There was evidence from which a reasonable jury could have found that Felicia committed bank fraud when she lied on her credit application about being employed by the fictitious Global Life in order to obtain a loan from the federally insured Intrust Bank. See, e.g., Williams, 865 F.3d at 1304–05, 1309–10 (upholding bank fraud conviction for applying for a mortgage loan using false information); see also Hollis, 971 F.2d at 1444–45, 1452 (upholding bank fraud convictions for making false statements in order to obtain loans). That bank fraud was complete when

---

**(1)** to defraud a financial institution; or

**(2)** to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

Felicia "knowingly provided [this] materially false information in order to induce the loan." Hollis, 971 F.2d at 1452.

Cunningham concedes that the Government adequately proved that Felicia committed the fraud charged in Count 2, but he does contend that there was insufficient evidence to convict him for aiding and abetting Felicia's bank fraud. We agree.

"[A] person is liable under [18 U.S.C.] § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." Rosemond v. United States, 572 U.S. 65, 71 (2014).[7] There was no evidence presented at trial on which a reasonable jury could have found that Cunningham took any affirmative action in furtherance of Felicia's bank fraud charged in Count 2, let alone that he took such affirmative action with the intent to facilitate that bank fraud.

The evidence indicated that Felicia went to the CarStoreUSA by herself, applied for and received a bank loan from Intrust in her own name, and used that loan to purchase the 2013 Mercedes Benz in her name only. There was simply no evidence that Cunningham was involved in or took any affirmative action to further any of Felicia's acts.

The Government points to evidence that Felicia obtained the loan for the 2013 Mercedes Benz by lying about her employment with Global Life and that

---

[7] We "assess the sufficiency of the evidence against the legal elements of the offenses, not against the elements listed in the jury instructions." United States v. Simpkins, 90 F.4th 1312, 1314 (10th Cir. 2024).

8

Cunningham later used that same lie to finance several other cars as part of the couple's fraudulent scheme. The Government also notes that on later loan applications, Cunningham used the same contact information that Felicia included on her loan application to buy the 2013 Mercedes Benz. But this evidence about Cunningham's later conduct involving similar activity does not prove that he took any affirmative action to facilitate the bank fraud charged in Count 2—Felicia's fraudulently obtaining a bank loan from Intrust on or about December 5, 2018.

This situation, then, is distinguishable from the facts this court addressed in United States v. Joseph, 108 F.4th 1273 (10th Cir. 2024), cert. denied, 145 S. Ct. 2863 (2025), on which the Government relies. In that case, the United States charged Joseph with submitting false applications for federal Covid relief funds. In order to convict Joseph of this fraud, the Government had to prove that he acted with the intent to defraud the federal government or to misapply the funds he obtained from the government. Id. at 1277, 1280. This court held that evidence of Joseph's actions both before and after he fraudulently applied for the relief funds was relevant to determine his intent at the time he applied for the funds. Id. at 1280–81. In that case, there was evidence of Joseph's culpable actions and the only question was his intent when he undertook those actions. That differs from this case, where the prosecution failed to present evidence that Cunningham took any affirmative action to facilitate Felicia's bank fraud charged in Count 2. In light of that, we do not consider what evidence is relevant to his intent.

We, therefore, reverse Cunningham's bank fraud conviction on Count 2.[8]

## B. 2015 Maserati purchased in January 2019 (Counts 3 (bank fraud) and 12 (money laundering))

On January 3, 2019, Cunningham bought a 2015 Maserati from Wichita's CarStoreUSA, financing that purchase with a $45,000 loan from Wells Fargo Auto that he obtained through the dealership. Cunningham fraudulently obtained this loan by lying about being employed by the same fictitious Global Life for which Felicia purportedly worked. This evidence supports Cunningham's conviction for bank fraud charged in Count 3. See Williams, 865 F.3d at 1304–05, 1309–10; Hollis, 971 F.2d at 1452. Cunningham does not challenge that conviction.

He does, however, challenge the sufficiency of the evidence to support his conviction on Count 12, which charged money laundering based on Cunningham selling the Maserati to a car dealership in Georgia a few months after buying it. The evidence relevant to that sale indicated the following: When Cunningham bought the Maserati from CarStoreUSA, the dealership prepared and gave him title documents identifying Wells Fargo Auto as the car's lienholder. In addition, based on Cunningham's Kansas residence, CarStoreUSA also filed a Notice of Wells Fargo Auto's security interest with the Kansas Department of Revenue.

---

[8] In light of this conclusion, we need not address Cunningham's alternate argument for reversing his conviction on Count 2—that the district court abused its discretion in instructing the jury on aiding and abetting because there was insufficient evidence to support that instruction. See Simpkins, 90 F.4th at 1318 n.4.

10

Cunningham did not register the car in Kansas, however, but instead registered it in Georgia. Before doing so, Cunningham altered the title paperwork to eliminate Well Fargo Auto's lien. Using that altered title paperwork, Cunningham was able to obtain clear title to the Maserati. Cunningham used that false clear title to sell the Maserati to a Georgia car dealership a few weeks later for $25,000.

Based on Cunningham using the false clear title to sell the Maserati, Count 12 charged him with money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).[9] "[I]n order to prevail at trial" on that charge,

_____

[9] Section 1956(a)(1) provides:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
>
> . . . .
>
> **(B)** knowing that the transaction is designed in whole or in part--
>
> > **(i)** to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . .
>
> . . . .
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the

the government was required to prove four elements beyond a reasonable doubt: (1) that Defendant engaged in a financial transaction; (2) that Defendant knew that the property involved in that transaction represented the proceeds of his unlawful activities; (3) that the property involved was in fact the proceeds of that criminal enterprise; and (4) that Defendant knew that "the transaction [was] designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control" of the proceeds of the specified unlawful activities.

United States v. Garcia-Emanuel, 14 F.3d 1469, 1473 (10th Cir. 1994) (quoting 18 U.S.C. § 1956(a)(1)(B)(i)); see 1.178 (Instruction 6).

The money laundering theory that the Government presented to the jury at trial was this: As to elements two and three, the unlawful activity producing the proceeds was Cunningham's bank fraud—fraudulently obtaining the loan from Wells Fargo Auto to buy the Maserati.[10]  That bank fraud was complete when Cunningham "knowingly provided materially false information in order to induce the loan." Hollis, 971 F.2d at 1452.  The proceeds of that bank fraud was the title to the Maserati, encumbered by Wells Fargo Auto's lien.[11]  As to the first element, the financial

---

proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

[10] See 18 U.S.C. § 1956(c)(7)(A) (defining "specified unlawful activity" for purposes of § 1956(a)(1)(B)(i) by referencing 18 U.S.C. § 1961(1), which includes financial institution fraud under 18 U.S.C. § 1344).

[11] See 18 U.S.C. § 1956(c)(9) (defining "proceeds" to mean "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity"); see also United States v. Myers, 854 F.3d 341, 349 (6th Cir. 2017) (upholding venue for money laundering convictions, where the "proceeds" were stolen motor homes that the defendant laundered by selling them).

12

transaction supporting the money laundering charge was Cunningham transferring the Maserati's title when he sold that car to the Georgia dealership.[12]  Cunningham does not challenge the sufficiency of the evidence to support the jury finding each of these first three money laundering elements.

He challenges only the Government's evidence as to the fourth element—that he engaged in this financial transaction knowing that it was "designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity," 18 U.S.C. § 1956(a)(1)(B)(i).  We refer to this challenged fourth element as the design element.  "'[D]esign' means purpose or plan."  Regalado Cuellar v. United States, 553 U.S. 550, 563 (2008) (addressing a different section of the money laundering statute than the section in our case but relevant to our analysis, 18 U.S.C. § 1956(a)(2)(B)(i), which criminalizes transportation "designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity"); see also Garcia-Emanuel, 14 F.3d at 1474 (stating that § 1956(a)(1)(B)(i) "is aimed at transactions that are engaged in for the purpose of concealing assets").

> The following types of evidence may be indicia of an intent to disguise or conceal illegal proceeds:
>
>> statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the

---

[12] See 18 U.S.C. §  1956(c)(4)(A)(iii) (defining "financial transaction" for purposes of § 1956(a)(1)(B)(i) to include "the transfer of title to any . . . vehicle").

13

transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; using third parties to conceal the real owner; a series of unusual financial moves cumulating in the transaction; or expert testimony on practices of criminals.

United States v. Dermen, 143 F.4th 1148, 1222 (10th Cir. 2025) (quoting United States v. Shepard, 396 F.3d 1116, 1120 (10th Cir. 2005)).  The evidence that a defendant knew that a transaction was designed to conceal illegal proceeds must be substantial.  See Garcia-Emanuel, 14 F.3d at 1476.

Here, there was sufficient evidence from which a reasonable jury could have found that Cunningham knew that selling the Maserati to the Georgia car dealer was "designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity," 18 U.S.C. § 1956(a)(1)(B)(i).

As an initial matter, Cunningham points out that he sold the Maserati using his own name and did not alter the VIN number on the car.  But money laundering does not require the Government to prove that Cunningham concealed his identity.  See United States v. Gonzales, 918 F.3d 808, 816 (10th Cir. 2019) (citing United States v. Lovett, 964 F.2d 1029, 1034 n.3 (10th Cir. 1992)); see also Dermen, 143 F.4th at 1222.  Rather, the Government had to prove that Cunningham sold the car, knowing that transaction was designed, at least in part, "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful

14

activity," 18 U.S.C. § 1956(a)(1)(B)(i) (emphasis added).  There was sufficient evidence Cunningham acted with that knowledge.

First, by altering the title paperwork to eliminate Well Fargo Auto's lien, Cunningham was able to conceal or disguise that he had obtained the Maserati through bank fraud—using false information to obtain a bank loan from Wells Fargo Auto to finance his purchasing the Maserati.  Altering the title paperwork to eliminate Wells Fargo Auto's lien would have also made it more difficult for Wells Fargo Auto to enforce its security interest in the Maserati by, for example, repossessing the car if, as happened, Cunningham defaulted on the bank loan.

In addition, Cunningham took the unusual step of taking the Maserati across the country, from Kansas to Georgia, before using altered title paperwork to register the car in Georgia.  Going to Georgia enabled Cunningham, among other things, to avoid the notice of Wells Fargo Auto's security interest that the car dealer filed in Kansas.  Taking the Maserati from Kansas to Georgia also made it more difficult for Wells Fargo Auto to enforce its lien.

In this way, Cunningham was able to conceal or disguise the source of his bank fraud proceeds—the Maserati—and he was able to conceal that Wells Fargo Auto had some control over the car by being able to foreclose on or otherwise enforce its lien if Cunningham did not make the required payments on the bank loan that Wells Fargo Auto made to Cunningham.

Furthermore, in selling the Maserati to the Georgia dealership, Cunningham surrendered the false clear title that he had fraudulently obtained.  The Georgia

15

dealership would have recorded its title to the Maserati, which it would have then transferred if and when the dealership sold the Maserati to someone else. That further distanced the Maserati from Cunningham's bank fraud.

This evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that Cunningham knew that his selling the Maserati was designed, at least in part, "to conceal or disguise the nature, the location, the source, the ownership, or the control" of the car, 18 U.S.C. § 1956(a)(1)(B)(i), which was the proceeds of Cunningham's bank fraud. See Shepard, 396 F.3d at 1120 (noting transaction's "highly irregular features" can be evidence supporting the design element, quoting Garcia-Emanuel, 14 F.3d at 1475–76).

In reaching this conclusion, we reject Cunningham's assertion that the evidence was such that a reasonable jury could have only found that he sold the Maserati to the Georgia car dealership to get money. Even if we accept that a jury might have found that that was one purpose of transferring the title (and the car) to the Georgia dealership, there was sufficient evidence for a jury to find, in addition, that Cunningham knew that his selling the Maserati to the Georgia dealership was "designed . . . in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of" the bank fraud. 18 U.S.C. § 1956(a)(1)(B)(i). See United States v. Faulkenberry, 614 F.3d 573, 586 (6th Cir. 2010) (stating that § 1956(a)(1)(B)(i) "requires only that the transaction be designed 'in whole or in part' to conceal"). We, therefore, affirm Cunningham's money laundering conviction on Count 12.

16

**C. 2014 Land Rover purchased in May 2019 (Counts 5 (bank fraud), 9 (wire fraud), and 14 (money laundering))**

On May 1, 2019, the Cunninghams jointly bought a 2014 Land Rover from KC Motors in Bucyrus, Kansas, for $49,000. Initially, Cunningham alone tried to buy this 2014 Land Rover with a loan obtained through the dealership in his name. In his on-line loan application, Cunningham again lied about being employed by Global Life.

The salesman had trouble getting this loan for Cunningham because he still had an "open" loan with Wells Fargo Auto for the 2015 Maserati (3.743), which Cunningham had already sold to a car dealer in Georgia. Cunningham falsely told the KC Motors salesman that the Maserati had been totaled in a wreck and, to support that misrepresentation, sent the salesman a fictitious letter purportedly from an insurance claims adjuster. After submitting that false insurance report and adding his wife to the loan application, the Cunninghams were able to finance their joint purchase of this vehicle with a loan from Great Plains Credit Union. Felicia's loan application indicated that her name was Alisha or Alishea Anderson Cunningham instead of Felicia, and the social security number Felicia used did not belong to her.

This evidence supported Cunningham's bank fraud conviction on Count 5. See Williams, 865 F.3d at 1304–05, 1309–10; Hollis, 971 F.2d at 1452. He does not challenge that conviction. He does, however, challenge the sufficiency of the evidence to support his wire fraud conviction on Count 9 and his money laundering conviction on Count 14, both of which are related to the 2014 Land Rover.

17

**1. Count 9 (wire fraud)**

Most of the arrangements for the purchase of the 2014 Land Rover were made via emails exchanged between Cunningham and the KC Motors salesman that occurred during the month preceding the purchase. Those emails were the basis of Count 9, charging Cunningham with wire fraud in violation of 18 U.S.C. § 1343.[13]

One of the elements that the Government had to prove in order to convict Cunningham of this charge was that the wire communications—the emails between Cunningham and the salesman—travelled through interstate or foreign commerce. See United States v. Holloway, 826 F.3d 1237, 1245–46 (10th Cir. 2016) (listing use of interstate commerce as one element of wire fraud); see also 1.76 (Instruction 5). The indictment specifically charged that these emails travelled "from [Cunningham's] Yahoo.com email account" through "a server in California to KC Motor Company located in Overland Park, Kansas." (1.27.) On appeal, the Government conceded at oral argument that it failed to present any evidence that the

---

[13] Section 1343 provides, in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

emails passed through a server in California. Our review of the record confirms that. We, therefore, reverse Cunningham's conviction on Count 9.

### 2. Count 14 (money laundering)

Count 14 charged Cunningham with money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). That charge was based on his later using the 2014 Land Rover to obtain a title loan. The evidence regarding that transaction indicated the following: When Cunningham and Felicia jointly bought the 2014 Land Rover, the dealership, KC Motors, prepared title paperwork identifying Great Plains as the lienholder. But when Cunningham registered the car in Johnson County, Kansas, the title paperwork he used did not identify any lienholder. That enabled him to get false clear title to the 2014 Land Rover.

Furthermore, in Kansas, when a person registers a car with a lien on it, the State will not issue a paper title. Instead, the title information is stored electronically until the lien is satisfied and only then is a paper title issued. Thus, Cunningham, by altering the title paperwork to eliminate Great Plains' lien, was able to get a false clear paper title for the 2014 Land Rover. Cunningham used that false title six months later to obtain an $11,560 title loan from LoanMax in Olathe, Kansas. In exchange for the title loan, Cunningham relinquished the false clear paper title to LoanMax, which then recorded its own lien.[14]

---

[14] Title loan companies generally make loans to individuals who have clear title to their vehicles. The title company takes possession of the title and records its lien, so that if the vehicle owner fails to repay the title loan, the title loan company can take the vehicle.

Cunningham argues that there was insufficient evidence from which a reasonable jury could have found the fourth money laundering element—that he "knew" that his transferring the 2014 Land Rover's title to obtain the title loan from LoanMax was "'designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control,' of the proceeds of the specified unlawful activities." Garcia-Emanuel, 14 F.3d at 1473 (quoting 18 U.S.C. § 1956(a)(1)(B)(i)). We disagree.

By eliminating Great Plains' lien from the title paperwork before registering the 2014 Land Rover, Cunningham concealed or disguised that that vehicle was proceeds of bank fraud—his purchasing the Land Rover with a fraudulently obtained bank loan from Great Plains. Cunningham also concealed the fact that Great Plains, as the lienholder, had at least some control over the vehicle by, for example, being able to repossess the 2014 Land Rover if Cunningham failed to make payments on the bank loan, thereby diminishing the likelihood that his fraud would be exposed.

Cunningham further disguised that the 2014 Land Rover was proceeds of his bank fraud when he relinquished the false clean paper title to LoanMax in order to obtain the title loan. LoanMax subsequently recording its own lien on the false clear title further distanced Cunningham's bank fraud and made it more difficult for the original lienholder, Great Plains, to enforce its lien.

On this evidence, a reasonable jury could find that Cunningham knew that this title loan transaction was designed at least in part "to conceal or disguise the nature, the location, the source, the ownership, or the control" of the 2014 Land Rover,

which was proceeds of Cunningham's bank fraud.  18 U.S.C. § 1956(a)(1)(B)(i).

We, therefore, affirm his money laundering conviction on Count 14.

**D. There was sufficient evidence to support Cunningham's remaining money laundering convictions (Counts 13, 15, 16).**

The Cunninghams followed the same general scheme as to the remaining three used cars they purchased.  In November 2019, Cunningham bought a 2012 BMW from Lawrence KIA.  He financed that purchase with a bank loan he got through the dealership from the federally insured Mechanics Bank.  Cunningham fraudulently obtained that bank loan by using a false Missouri address and someone else's social security number.  Before registering the BMW in Geary County, Kansas, Cunningham eliminated Mechanics Bank's lien information from the title paperwork.[15]  That enabled him to obtain a false clear paper title to the BMW, which he later used to obtain a $10,500 title loan from Check into Cash.  Cunningham relinquished the false clear title to the BMW to Check into Cash, which recorded its lien.

On December 13, 2019, Cunningham bought a 2014 Mercedes Benz from Lawrence Kia.  He financed that purchase with a bank loan he obtained through the dealership from Ally Financial.  Cunningham obtained that bank loan by using a false

---

[15] Cunningham registered three titles in Geary County, Kansas.  Although some Kansas counties destroy the title paperwork needed to register a vehicle immediately after entering it electronically, Geary County retains paper copies of those documents.  Law enforcement was, thus, able to examine the three altered titles that Cunningham used to register vehicles in Geary County and reported that those titles were discolored, apparently by a chemical agent or some other liquid that had been used to remove the lienholder information.

21

social security number and a fake Missouri address. Furthermore, in applying for the loan, Cunningham asserted that he was currently working for Business Builders, but when asked for documentation to verify his employment, Cunningham submitted a pay stub from the fictitious Global Life. Before registering the 2014 Mercedes Benz in Kansas, Cunningham eliminated Ally's lien from the title paperwork. That enabled him to obtain a false clear paper title, which he later used to obtain a $10,000 title loan from Missouri Title Loans Inc. In exchange for the title loan, Cunningham gave the false clear title to the title company, which added its lien to it.

Lastly, on December 17, 2019, Felicia bought a 2015 Land Rover from Lawrence Kia, financing that purchase with a loan she obtained through the dealership from Ally Financial. Cunningham initiated this purchase with Lawrence Kia and Felicia, who was in Georgia, then completed the loan application online, again lying about being employed by Global Insurance. The Lawrence Kia salesman later met with Felicia and Cunningham in person in Atlanta to have Felicia sign the purchase documents. Cunningham took possession of the car in Kansas. When he registered the car, in both his and Felicia's name, Ally's lien had been eliminated from the title paperwork. Cunningham was, thus, able to obtain a false clear paper title to the car in his name, which he later used to get a $7,500 title loan from Loan Smart. Loan Smart, in turn, took the false clear title and added its lien.

Cunningham does not challenge his bank fraud convictions for each of these three car purchases (Counts 6, 7, and 8). But he does argue that there was insufficient evidence to support any of these three money laundering convictions

22

stemming from his use of these cars—proceeds of his bank fraud—to obtain cash through title loans. Specifically, Cunningham again argues there was insufficient evidence to prove the fourth money laundering element—that he engaged in these financial title loan transactions knowing they were "designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity," 18 U.S.C. § 1956(a)(1)(B)(i). We again disagree, for the same reasons we have already discussed. We, therefore, affirm each of his money laundering convictions on Counts 13, 15, and 16.

## IV. CONCLUSION

We REVERSE Cunningham's convictions on Count 2 for bank fraud and Count 9 for wire fraud; AFFIRM his money laundering convictions on Counts 12 through 16; and REMAND for resentencing and to recalculate restitution, if necessary.